UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DELGADO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　Defendant. | Case No.  1:21-cv-01728-HBK<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY [1]<br><br>(Doc. Nos.  13, 16) |

Maria Delgado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits under the Social Security Act. (Doc. No. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 13, 16-17). For the reasons stated, the Court orders this matter remanded for further administrative proceedings.

## I.    JURISDICTION

Plaintiff protectively filed for disability insurance benefits on January 21, 2019, alleging

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1).  (Doc. No. 9).

an onset date of October 16, 2018.  (AR 196-201).  Benefits were denied initially (AR 70, 90-94), and upon reconsideration (AR 87, 98-103).  Plaintiff appeared before an Administrative Law Judge ("ALJ") on November 3, 2020.  (AR 36-56).  Plaintiff was represented by counsel, and testified at the hearing with the assistance of a Spanish language interpreter.  (*Id.*).  On December 2, 2020, the ALJ issued an unfavorable decision (AR 15-35), and on October 14, 2021 the Appeals Council denied review (AR 1-8).  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II.     BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 53 years old at the time of the hearing.  (AR 40).  She completed the ninth grade.  (*Id.*).  She lives with her husband.  (*Id.*).  Plaintiff has work history as a deli cutter and slicer, office helper, hand packager, and machine operator.  (AR 41-42, 52).  Plaintiff testified that she stopped working, and can no longer work, because of her arthritis and joint pain.  (AR 41, 43-44).  She reported that her pain is always between an 8 and 10 on a scale of 10.  (AR 44-45).  Plaintiff testified she can walk about a block, stand about an hour at a time, sit for half an hour because of back pain, lift a maximum of 2 or 3 pounds, and use her hands for 15 minutes before she has to stop and rest them for 30 minutes.  (AR 47-50).  She reported headaches, memory issues, shoulder pain, neck pain, and pain in her right foot.  (AR 51-52).

## III.     STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of

impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 16, 2018, the alleged onset date. (AR 23). At step two, the ALJ found that Plaintiff has the following severe impairments: rheumatoid arthritis; Chiari I malformation; degenerative disc disease of the cervical and lumbar portions of the spine; degenerative joint disease of the right shoulder with osteophyte formation; and bunion. (AR 23). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 24). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) with the following limitations. The claimant can lift/carry 10 pounds frequently and 25 pounds occasionally. She can stand/walk six hours and sit six hours during an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. She can frequently handle and finger bilaterally. She must avoid even moderate exposure to extreme cold. The claimant must avoid concentrated exposure to wetness and humidity. She must avoid unprotected heights and dangerous moving machinery.

(AR 24).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 28). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: marker, housekeeping cleaner, and cafeteria attendant. (AR 28-29). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 16, 2018, through the date of the decision. (AR 29).

////

////

**VI.    ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's subjective complaints;
2. Whether the ALJ properly considered the medical opinion evidence; and
3. Whether the ALJ failed to properly account for the limitations arising from Plaintiff's Chiari I malformation in assessing the RFC.

(Doc. No. 13 at 10-20).

**VII.    DISCUSSION**

**A.  Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing

[evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 25). More specifically, the ALJ found the limitations assessed in the RFC "adequately accommodate [Plaintiff's] symptoms, especially considering the objective findings have generally been mild and at most, moderate, that she has only engaged in conservative treatment, and that she has endorsed the efficacy of that treatment." (AR 27). Plaintiff argues these are not specific, clear, and convincing reasons for discounting Plaintiff's symptom claims. (Doc. No. 13 at 10-14). The Court agrees.

First, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Furthermore, evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). However, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, 2018 WL 1567814, at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)). Thus, an ALJ errs in rejecting subjective complaints on these grounds where he fails "failed to explain why [the treatment] is routine or conservative or what more aggressive treatment was available and appropriate for Plaintiff." *See Candice C. v Saul*, 2019 WL 5865610, at *4 (C.D. Cal. Nov. 8, 2019).

7

1    Defendant contends that "the ALJ pointed out that the record was replete with instances of
2  Plaintiff reporting she both received routine medication management for headaches, dizziness,
3  upper back pain, and generalized joint pain, and that she endorsed routine treatment was helpful."
4  (Doc. No. 16 at 22). However, the Court's review of the records cited by Defendant do not
5  include any "endorsement" by Plaintiff that "routine treatment was helpful"; nor do the cited
6  records include any indication that more aggressive treatment options were available or
7  appropriate for Plaintiff. (AR 417-19, 512-14, 515-17, 521-23, 524-26, 527-29). Rather, the
8  same records indicate under the "treatment" heading that Plaintiff is unable to work permanently.
9  (*See id.*). Moreover, as noted by Plaintiff, all of the records cited by Defendant include Plaintiff's
10 consistent reports of severe chronic upper back pain and numbness of upper extremities, severe
11 painful joints, and severe headaches and dizziness, contrary to the ALJ finding that Plaintiff's
12 "reports have generally been mild." (*See id.*; AR 25).

13   In addition, while Plaintiff acknowledges that the record includes evidence of
14 improvement in her rheumatoid arthritis symptoms with medication, and temporary improvement
15 of her knee pain with physical therapy, Plaintiff argues that the ALJ fails to offer evidence of
16 improvement as to Plaintiff's claims of "unrelenting" and "constant" back pain and headaches.
17 (Doc. No. 13 at 10-11; AR 25-26, 447-49, 451 (reporting "significant improvement in left knee"
18 and "greater strength and stability when walking"), 475 ("doing good with [rheumatoid arthritis]"
19 but going to see neurologist for headaches), 483 (reporting medication helping with joint pain but
20 still complaining of headaches), 485, 488). The Court agrees. As noted by Plaintiff, the ALJ fails
21 to consider Plaintiff's testimony that she experienced level 8 of 10 pain daily, her ongoing reports
22 to her treating provider that she was experiencing "severe" back pain and headaches, and post-
23 craniectomy MRI imaging of Plaintiff's head during the relevant adjudicatory period that
24 identified "cerebral white matter that may be seen with migraines." (Doc. No. 13 at 11-13; AR
25 44, 50, 415, 483, 493, 501, 513, 516, 519, 522, 525, 528).

26   Based on the foregoing, the Court finds the ALJ's reliance on Plaintiff's reports of
27 improvement in joint and knee pain, without considering Plaintiff's continual reports of back pain
28 and headaches, or indeed any consideration of her hearing testimony or the "severe" pain reported

to treating providers, does not rise to the level of substantial evidence to support wholesale discounting of her symptom claims because of alleged improvement with routine treatment. This not a clear and convincing reason to reject Plaintiff's symptom claims.

Second, the ALJ generally found that "most physical findings have been no more than moderate in severity." (AR 25). In support of this finding, the ALJ cited musculoskeletal examinations throughout the record that found normal range of motion in the spine; x-ray imaging of the shoulder showing "only" degenerative changes of the acromioclavicular joint with osteophyte formation; a consultative examination finding normal coordination, gait, strength, and sensations with "mild" deficits in range of motion and reduced reflexes; and September 2020 MRI imaging of Plaintiff's lumbar spine that revealed degenerative changes with moderate canal stenosis without neural impingement and "no severe findings." (AR 25-26 (citing AR 314, 317, 320, 359, 383-85, 415, 418, 493, 513, 516, 522, 525, 528)). However, as noted by Plaintiff and discussed *supra*, the ALJ failed to consider objective testing in the record, including MRI imaging of Plaintiff's head post craniectomy to treat Chiari Malformation.

Moreover, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added))); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were not supported by substantial evidence. Thus, because lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting all of Plaintiff's symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims.

////

////

**B. RFC**

Plaintiff additionally argues that the ALJ's assessment of the RFC was not supported by substantial evidence because: (1) the ALJ improperly assessed the opinion of Plaintiff's treating physician Antonio Villalvazo, M.D., and (2) the ALJ failed to account for limitations arising from Plaintiff's Chari I Malformation.[2] (Doc. No. 13 at 14-20). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence).

Because the analysis of the RFC is dependent on the ALJ's reevaluation of Plaintiff's symptom claims, including headaches arguably related to her diagnosis of Chiari I Malformation, the Court declines to address these challenges in detail here. The reassessment of Plaintiff's symptom claims is also particularly relevant to the ALJ's consideration of Dr. Vallalvazo's medical opinions because the ALJ relies in large part on Plaintiff's reports regarding her symptoms and the efficacy of mediation in evaluating the consistency factor under the new regulations. *See* 20 C.F.R. § 404.1520c(c)(2). On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and conduct a new sequential analysis considering all of the evidence in the record, including a reassessment of the RFC and step five finding if necessary.

**C. Remedy**

Plaintiff contends that the proper remedy in this case is a remand for further administrative proceedings. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative

---

[2] Plaintiff also argues the ALJ should have called a medical expert regarding her Chiari I Malformation "to resolve differing opinions of doctors on a complicated medical issue with which the common lay person would not have an in depth understanding." (Doc. No. 13 at 19). Defendant correctly notes that "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." (Doc. No. 16 at 19). The Court finds it unnecessary to consider whether the ALJ had a duty to develop the record in light of the finding that the ALJ must reconsider Plaintiff's symptom claims and conduct a new sequential analysis on remand.

proceedings would serve a useful purpose). The Court agrees. Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate Plaintiff's symptom claims, as well as all relevant medical evidence, including medical opinions. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 16) is DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. An application for attorney fees may be filed by separate motion within thirty (30) days.
5. The Clerk shall enter judgment in favor of Plaintiff, terminate any motions and deadlines, and close this case.

Dated:  March 24, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE